Mr. Myers, we'll hear from you. Your Honors, may it please the Court, I'm Robert Myers and I represent Appellant Brian Barthman. Everyone in this case agrees that Mr. Barthman was sentenced under an erroneous guideline range that was too high. The guideline range he was sentenced under was 151 to 188 months, and the correct guideline range was 135 to 168 months. Because of that, we're asking this Court to vacate the sentence and remand so that Mr. Barthman has the chance, in our view, the likelihood, given the state of the record and the law, that he receive a lower federal sentence. How do you think this was missed in the District Court by the capable counsel of the Federal Public Defender? It's just an obscure point about the age of 12 v. Brian Barthman or what? Well, I think the government admits that if you, they concede in their brief that if you examine the statutes, right, so if you compare 609342 Subdivision 1A and 609343 Subdivision 1A, the Minnesota Criminal Sexual Conduct Provisions at Issue, with the definition of forcible sex offense, that it's obvious that the state statutes are wrong. Oh, I know. That's why I'm asking. If it's so obvious, it just seems like we're going through a lot of energy here that could have been avoided. Yeah, I mean, it obviously would have been better had it been avoided. You know, it's difficult to speculate. The state statutes were not introduced into the record. It does not appear that the District Court examined the statutes, despite objections from defense counsel. I mean, counsel didn't appear to have identified the issue because the objection didn't point to this problem. Right. The objection came at it from a different way, right? Right, but why not just say what you're saying here, and then the judge could have said, okay, and now you're saying, well, we preserved it, but the judge wasn't alerted to this issue. Sure. Well, even if we didn't preserve it, our position is that we satisfy the plain error test. I understand. And if there are questions on the forfeiture argument, I'll certainly take those, but otherwise I'd like to rest in my brief on those arguments and proceed directly to plain error. So, the government only contests two prongs of the plain error test, that the error was plain and that the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. On the second prong, for all the reasons we discussed, I think that this error is plain. I mean, the government flat out says that if you examine the state statute strictly, I think they have some sort of limitation about, you know, strictly construed, it's a plain error. And we know under Henderson that you evaluate the time, you know, you evaluate the law at the state of the appeal, at the time of the appeal, and we have the benefit of both statutes. We can do the comparison, and it's obvious that the Minnesota state statute reaches victims under 13, and it's also obvious that the federal forcible sex offense reaches victims who are under 12. And therefore, it's also obvious that the state statute is broader than the federal statute. So I think it's difficult to conceive of how this error is not plain. Sometimes in these categorical approach analysis, you'll have a state statute that, you know, uses language that doesn't exactly track the relevant federal definition, and then you have some difficult parsing problems about how you sort of integrate that state statute's language against the federal test. So for example, Minnesota assault talks about attempt to inflict or inflict great bodily harm, right? And you have to measure that up against the force clause, which doesn't use, you know, great bodily harm or words like that, but instead speaks about the use, attempted use or threatened use of violent force. So that can get a bit tricky. But here the measuring stick is the same in both instances. Both of them talk about the age of the victim. So you don't have any complicated interpretation problem. It's just a straight, simple Venn diagram. The state statute is under 13. The federal enhancing provision is under 12. Obviously that's broader. If there are any questions on why this error is plain, I'll take those. Otherwise, I'm going to proceed to the fourth problem. You may proceed. I might have missed, I think I misspoke. I thought the public defender had represented Mr. Barthman at sentencing, but I gather it was not the public defender. It was not our office. It was someone appointed under the Criminal Justice Act, so, you know. Go ahead. Let's go ahead and say what you want about the other prong. Right. So under the fourth prong, appellate courts correct errors that are plain that seriously affect the defendant's substantial rights, which here the government has conceded, which I think is correct under Molina-Martinez. If those errors seriously affect the fairness, integrity or public reputation of judicial proceedings, and it just so happens that the Supreme Court has issued a recent decision on this, Rosales-Miralez, which was briefed in the reply brief that I'm sure your honors are aware of. And Rosales-Miralez says that when the other three tests are met, the other three prongs of the plain error test, that you should, an appellate court should exercise its discretion to correct the error. And here the other three prongs are met. The government concedes that it's error. I think they all but concede that it's plain error. They concede that the third prong is met. And so I think that under Rosales-Miralez, this court should correct the error. Many of the factors discussed in Rosales-Miralez are present here. This error, if uncorrected, frustrates the United States Sentencing Commission's ability to make appropriate revisions to the guidelines, because there is a higher federal sentence than there should be, or a federal sentence based on an incorrect guideline range that goes into their data mix. And there's actually very good reasons for suspecting that the district court here would provide a lower sentence. In Molina-Martinez, the Supreme Court said the fact that the original sentence was at the bottom of the original, albeit incorrect, guideline range evinced an intent by the district court to sentence lower had the guideline range been corrected. That's also true here. Chief Judge Thunheim sentenced to 151 months. That's the bottom of the range. Moreover, it's either a page . . . Could they really say that? I don't understand. I mean, I can understand why there's certainly potential for that, but why does it . . . Are you asking if they say that in Molina-Martinez? Yeah, I mean, is that a quote that it evinced an intent to sentence at the bottom of the range if the guideline range were lower? How would we know that? I actually think it evinced an intent is close, but they definitely say that on this record in Molina-Martinez where the original sentence was at the bottom of the guideline range, that it's reasonable to infer. They're not saying it's ironclad, but it's reasonable to infer that the district court would have sentenced lower under a new range. That is the thrust of their reasoning. All right. I can understand that point, but you said it more strongly at first. Right. Well, that may actually be a direct quote, but I don't have the case up here with me, so I don't want to . . . But here we have more evidence, Your Honors, because here Chief Judge Thunheim, I believe at either page 31, 32, or 33 of the sentencing transcript, said, I think there's some overstating of the criminal history category here. But then he said, but technically you've got these three extra points from the 2017 criminal sexual conduct convictions, so this is your range. Not only do we have a sentence at the bottom of the guideline range, but we have a statement by the district court judge saying, yeah, I think there's some overstating of the criminal history category in this case. In the Rosales-Morales case, the Supreme Court seemed to leave open the possibility that in an extraordinary case . . . they used the word ordinary, but in an extraordinary case that the fourth requirement from the plein air standard might not be satisfied in a circumstance like this. What do you think the Supreme Court was talking about there? What would be sort of a non-ordinary situation? They didn't specify. They said countervailing factors may undermine applying the fourth prong here, and they really didn't get into it. So I don't know. What I can say is they said that where the other three prongs are met, you should correct the error. And it's not just that the other three prongs are met here. It's that the district judge said there's some overstating. I think there's very good reason to suspect that he would receive a lower sentence. The district court rejected a higher sentence pushed by the government. You have the corruption of the Sentencing Commission data. You have the undermining of the public confidence in the judicial proceedings. I guess with my question, I'm just trying to figure out if there's anything strange about this case that could put it in the sort of the extraordinary category that would take it out so that leaves open the possibility that the fourth requirement might not be met despite Rosales-Morales. Well, our position is that it is not an extraordinary case, and I'm not going to argue against myself. The government did not, well, they didn't have the benefit. But I think Rosales-Morales was perhaps decided after their response brief. I'm not sure. It was somewhere in there. But our position is for all those reasons, this is a clear case where you should do it. In addition, I don't think the error was forfeited. I'd like to reserve my remaining few seconds for rebuttal if I may, unless there are other questions. You may reserve your remaining few seconds for rebuttal, and we'll hear from Counsel for the United States, Mr. Singh. Good morning. Good morning, Your Honors. May it please the Court, good morning. My name is Jordan Singh, and I represent the United States of America in this appeal. There's a few main points I want to cover today, and those include why plain error governs this case, why the error was not plain, but I'd like to start with what Judge Strass asked at the end, which is Rosales-Morales, because that case did come out after our briefing schedule, and the government's position is that this is not the usual case. And this is not the usual case because Mr. Barthman will not serve a single day longer in federal custody, regardless of the outcome of this appeal. Mr. Barthman is currently serving a 360-month state sentence, with a consecutive sentence to come after that, and he is currently in state custody. The thesis of the Rosales-Morales case was to look at the amount of peril that a defendant faces and that an incorrect guideline range would lead to an inference, perhaps, that they are serving longer in custody than they would otherwise. So what makes this case other than usual or other than ordinary is that that's not Mr. Barthman's situation. What happens, though, if he wins a state habeas challenge, right? So now we've got this really lengthy sentence, and, you know, they shorten the state sentence, and so it actually matters. Do we then have to come back and take a look at it again under the fourth prong, under the government's approach? I don't believe so, Your Honor, because the facts of the appeal as they currently are is that he's going to serve at least, I believe, even if it's only the 360-month sentence and there's a further adjustment to the consecutive sentence that's coming. With the way state time is calculated, he'll be serving at least 240 months of state time. So whether the range here is 151 months or 135 months on the federal sentence, this is not a case where Mr. Barthman is facing additional peril, and that takes it out of the Rosales-Morales case. You're saying the federal sentence is consecutive to the state sentence? I'm sorry. No, he has two state sentences. Right. And so he just appealed those sentences, and the court of appeals remanded on the second consecutive sentence but left in place the 360-month first, the first sentence. Right. So how does the federal sentence relate to those then? Because Mr. Barthman is already in state custody, regardless of how his federal sentence is applied here, because Judge Thunheim did 151 months. Will he be serving the federal time? It's a concurrent, it's a concurrent sentence, yes. I'm sorry. So you say that he'll have to serve the 135 or the 151 because it'll all come while he's serving his 360 in state custody? Exactly right. And I think that's why the Rosales-Morales case, the court, the majority focused... How do we know that? Do we know that that's the state law, and do we have any briefing on when he's eligible for parole and that sort of thing? You said 240 is the minimum he would serve. How do we know that? So we know that the way that the state calculates its sentence, which is going to be a total of two-thirds of his total sentence. And so here, even if only the original parole eligibility before that... Not that I'm aware of in his sentence. So I'm taking a very conservative world where Mr. Barthman only serves the 360 months on his first sentence, and there's nothing added. He's looking at at least two... I know. I'm just wondering how we know. Some of us aren't as familiar with Minnesota criminal law. You know, in Iowa or some other state, you get 360 months. You wouldn't necessarily serve 360 months. Right. And so just based on how good time credit and other calculations for his state sentence would apply, 240 months is a conservative estimate of how long Mr. Barthman will be in state custody. And so I think it's relevant that he's... I have the same question as Judge Colleton. Where do we go in the record to find those calculations? I think I would have to ask the court to take judicial notice of just how the state time would be calculated. Otherwise, we could supplement the materials and provide that authority because we didn't have the opportunity. If we were going to take judicial notice, where would you look? I would need to look at the exact Minnesota statutes for how they're calculating good time credit. And so if you want the actual statutes, I would supplement the record on that point. But... If we want a supplemental filing, we'll put out an order to that effect because you didn't have a chance to address Rosales-Morales, but... And the government would be happy... But your point is, you think you could show under Minnesota law that he's required to serve at least 240? Conservatively. Unless there's some action of the governor to commute or some post-conviction proceeding? Correct. And what if that happens? Then where are we? That's already been asked and answered, so... But Mr. Barthman has filed a petition for further review. It has not yet been granted, but the government's position would be on the record as it's currently constituted and where Mr. Barthman is currently serving his time, which is state custody, not federal custody. This is Judge Strass' question of, is this the usual case? It isn't. Rosales-Morales was a federal sentence, federal custody, additional peril, a wrong calculated range. I understand that. One might say, though, what's the big deal? Why not just let Judge Thunheim go back and use the correct range and make sure that there's no risk that he will serve too much time, extra time, if there's some quirk in the state situation that leaves him exposed to the federal sentence controlling his incarceration? Why is the government... What's the big deal? And I think the answer to that, Your Honor, is that the process here matters. So the Supreme Court has provided the guidance of, you know, resist this reflexive inclination to just correct something on appeal that wasn't preserved or wasn't plain below. And here, the district court, as you asked opposing counsel, was not on notice that there was any age-based challenge to this conviction. So we'd be living in a world under your question, Your Honor, in which a defendant could come at the appellate court and say, I didn't ask for a categorical approach. I didn't ask the court to do this analysis. But if it had, it should have been corrected. So what's the big deal? And the big deal is that's not how the process is supposed to work. You need to preserve your error below. You need to give the government a chance to respond to it. You need to give the district court a chance to analyze it and get it right. Well, but those are all arguments that would have prevailed for the government in Rosales and Morales. Seems to me that was the argument there. You're just saying there's a quirk here about the state sentence that makes it different. If we didn't have that, wouldn't wouldn't you say that Rosales requires a remand? Likely so, Your Honor. I would be focusing a lot more argument on whether or not the error is plain here. Because I do think there was no notice or opportunity. The government's conceding that there was an error made here. There were other objections that were made to the PSR that we presented evidence of the sentencing. Well, that's why it's not. That's why it's forfeited. But isn't it obvious now that we all look at it? I think it's obvious after 90 pages of appellate briefing and a categorical analysis that Judge Thunheim never did. So I think that it possibly would have been obvious had it been noticed. But the case law is pretty clear that it's not just with the benefit of appeal. Is it obvious now? It needed to be obvious then. And it wasn't. It's obvious at the time of appeal, I think, under. As long as there was notice to address it below. And so I would say here. Plain error assumes there was no notice to address it below. That's the whole point of plain error review, right? There was no notice. But we now look at the appellate stage, whether the error is obvious. I think. Correct me if I'm wrong. And I guess my response to that, Your Honor, would be that much like the Armed Career Criminal Act, which has been up at the appeals court often, these statutes are being attacked by offenders who are facing long sentences. So to say that the error is obvious, I think, would be putting the cart before the horse some ways. These issues need to be addressed. They're complicated issues and it's a complicated analysis. So to look now with appellate briefing and say, well, the court should have obviously been able to engage in a categorical analysis that a defendant never asked for, seen the overbreadth issue and been able to on the fly recalculate a criminal history score, I think would be broader than the rule would be intended to be. Counsel, I wanted to go back to the to the the fourth prong and ask you if you're if you're familiar with the Fifth Circuit's recent case. It's United States versus Fuentes-Canales, 902 F. 3rd 468. Are you familiar with that case? I've looked at some of the cases that came out after Rosales Morales. I would not say I'm an expert on the holding. Well, here's what the Fifth Circuit did. And it's clever. I'm not sure if it's too clever by half or what's going on there. But basically, it appears that the fourth requirement, what they do is they depart or potentially depart from the categorical approach and say, if we have evidence in the record for as applied to this case, the child was actually under 12. We are not going to send this back down for resentencing and sort of take a more hard line view of that fourth requirement. Is there any evidence here that the acts here happened to a child under 12 and that those are the acts that the jury convicted the defendant of? There are, Your Honor. And I think that's exactly how the issue was missed below. The court looked at the PSR and the court looked at the guidelines and the definition of a forcible sex offense, which was a victim under the age of 12, and looked at the guidelines and the definition of a forcible sex offense, which was a victim under the age of 9 at the time that all of the conduct occurred. But there were there were acts that occurred when between the ages of 12 and 13 for the victim, right? Or did all of the acts proceed age 12? I believe that the record is that all of them were under the age of 12. And I would have to look to be certain of that. But that is my belief. OK, but I know my time has expired. If I may have just briefly conclude to your question. You may. I think that the Fifth Circuit case and some of the cases that have come out after Rosales-Morales are building a continuum. Rosales-Morales didn't create a world in which you come up on plain error. You say, look, there's an incorrect guideline range. It has to be remanded. There's space there. And I think the unusual circumstances of Mr. Barthman's confinement and the record below make this not the usual case. And we would ask that this court affirm. Thank you, Your Honors. All right. Thank you, Mr. Singh. Mr. Myers, would you care to address the state sentence and why that whether that makes this extraordinary? Yes. No, it doesn't, Your Honor, for several reasons. It's not true that the defendant paces no peril. A petition for review is pending. There are state collateral challenges that can be made by Mr. Barthman. There's also executive action in a pardon. And there's also the possibility of habeas proceedings in federal court once the collateral state remedies are exhausted. And since this federal sentence currently is 151 months and our argument is it would be changed to 135, this court has to speculate out over 10 years in the future about whether his convictions would ever be, you know, his state sentence would ever be undermined. This court doesn't have the resources to do that. In fact, can't do that. That's an unknowable inquiry. Moreover, if this court accepts the government's argument, I see that I'm out of time, but if I just make one more brief point. If this court accepts the government's argument that like, well, you know, he's going to serve time in state court and something does change, he will have no remedy because he can't win on a 2255 because this is a mere guidelines error that's not constitutional in nature and sun bear will preclude him relief. So what the government is asking you to do is forecast out over 10 years in the future. Take the bet that all these remedies that he can still pursue, which we have no ability to forecast whether they'll be successful, just say, ah, doesn't matter. And then if that turns out to be wrong, Mr. Barthman is stuck with a sentence that he can't correct. That's not justice. This is a relatively easy thing to correct. Rosales-Murales talks about resentencing proceedings being relatively inexpensive, and it's not true that Rosales-Murales is merely based on peril of incarceration. Many other factors, public reputation, unfairness, undermining the court, the accuracy of sentencing guideline determinations. I'd invite the court to look at that. There are many other considerations. Finally, on the point that plain, you only get plain error if it was objective law. That's not true. That was rejected in Henderson. The government argued in Henderson that only errors that were brought to the court's attention should satisfy the plea. Counsel, with Judge Colleton's permission, you heard me talk about Fuentes-Canales with opposing counsel. What's your view? I just want to know the factual question. Were there acts the jury could have convicted the defendant of that occurred between, the victims were between 12 and 13 years of age? Or were all of them 12 or under, or under 12? I believe that some of the acts were after 12. So I read it differently than my esteemed colleague. I'm not positive. I, again, would have to go consult the record. But I think it is actually true that there were factual instances after the age of 12. And it's not the case that everything was before then. If this court is going to- I would say we would have to speculate 10 years out about what might happen on habeas and so forth. But what about the fact that the burden is on Barthman to get relief when he failed to object? And if he can't show that there's going to be an effect on public reputation, integrity, and so forth, then he loses. But I think he- So if with a speculation should- why doesn't the speculation cut against Barthman? Because it's speculative whether this will ever even make a difference. Well, I think if we're- and actually, there's something that's not speculative. While he's serving his time in- I forgot to mention this. While he's serving his time in- Can you come back to the question? Yes, yes, yes, yes. It's a good question, Your Honor. While he's serving his time in state court, he has a federal detainer on him from this sentence. That affects his eligibility for programming, for treatment. It makes his current conditions harsher than they otherwise would be. Just like when we have clients sentenced in federal prison, we see this all the time. If there's a state detainer, it affects their eligibility for treatment, for programming, their incarceral environment in terms of like how, you know, restrictive it is. There's different settings of prisons. Now, to your point- Why isn't the speculation a problem for Barthman? Because it's speculative whether this will ever make a difference to him, to his sentence. So it's only speculative on the narrow question of peril, narrowly defined as time in incarceration. It's not speculative based on the things that I just mentioned, that his state prison time is made harsher by the fact that he has a federal detainer. You mean for the last 16 months, if you- Yeah, right. He's obviously better off with having a federal detainer that's less than 151 months versus a federal detainer that's 151 months, because the detainer has adverse consequences to him. How do we know that? I called the Department of Corrections and I read some of their policies because I anticipated that there may be questions about this. There's nothing in the record, but I was told by the Department of Corrections that that was the case. I was told by the State Appellate Defender's Office that that was the case. It mirrors what happens in federal court. There's nothing in the record to that effect, but- And finally, in your question, it's also not speculative with respect to the other considerations. You don't have to speculate that this undermines the public perception of the fairness and integrity of judicial proceedings. As your Honor said, why not just do the fix? Well, because it's his burden maybe, and he didn't object, and we don't go through meaningless exercises would be the response. But for all the reasons that I've said, I don't think this is a meaningless exercise. I think that there are considerations that are satisfied in Rosales-Miralez. Well, I've said it all. Very well. Thank you for your argument. Thanks to both counsel. The case is submitted. The court will file an opinion in due course. That concludes the argument calendar for this morning and for the week. So the court will be in recess until further call of the docket.